IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOSEPH GALLAGHER, et al.,           :
                    Plaintiffs      :
                                    :
    v.                              :        3:CV-07-0912
                                    :        (JUDGE VANASKIE)
LACKAWANNA COUNTY                   :
                    Defendant       :


MEMORANDUM

In this Fair Labor Standards Act ("FLSA") collective action, Plaintiffs, current and former

Lackawanna County corrections officers, allege that Defendant violated the FLSA when it failed

to pay them overtime for attendance at mandatory pre-shift meetings that had the effect of

extending their working hours beyond 40 hours per week.  This Court bifurcated the damages

portion of the suit, and discovery as to liability has closed.  Defendant has filed a motion for

summary judgment. (Dkt. 64.)[1]  Defendant's motion will be granted in part.

Because there are genuine issues of material fact as to whether Defendant's alleged

conduct was willful, Defendant's motion for summary judgment as it applies to the statute of

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. The page numbers referenced in this Memorandum opinion refer to the page number of the electronic CM/ECF record.

limitations and liquidated damages issues will be denied. Defendant, however, is entitled to a finding that section 7(k) of the FLSA applies in this case and that Defendant had no obligation to announce an intent to create a section 7(k) work period. Consequently, Plaintiffs who failed to work over 42.75 hours in any given work period within the statute of limitations are not covered by the FLSA. Plaintiffs who worked over 42.75 hours in any given work period are proper Plaintiffs and are entitled to a determination as to whether the alleged pre-shift meetings account for compensable time. While this Court has determined that section 7(k) applies, the Court declines to determine at this stage of the litigation what rate of compensation Plaintiffs would be entitled to if liability under the FLSA is found.

I.    BACKGROUND

"Plaintiffs are correction officers and sergeants who either are or were employed by the County of Lackawanna at the Lackawanna County Prison ("Prison") between May 30, 2005, and May 30, 2008." (Defendant's Statement of Undisputed Material Facts ("DSUMF"), Dkt. 67, at ¶ 1.) The County of Lackawanna is a governmental entity organized and existing under the laws of the Commonwealth of Pennsylvania. (Id. at ¶ 2.) Lackawanna County owns and operates the Prison. (Id. at ¶ 3.) All Plaintiffs are covered by the collective bargaining agreement (CBA) entered into between Lackawanna County and the American Federation of State County, and Municipal Employees, District Council 87, AFL-CIO, in effect from January 1, 2005, through December 31, 2008. (Id. at ¶ 4.)

The CBA expressly provides:

> The normal work week for regular full-time employees shall consist of five (5) consecutive days with two (2) consecutive days off within any seven (7) day period. A work day for a regular full time employee is to consist of eight (8) consecutive hours including one-half hour meal period. A normal work day shall begin at the starting time of the employee's shift and continue for twenty-four (24) hours. A normal work week is to consist of forty (40) hours.

(Id. at ¶ 7 (quoting CBA at § 9.2, Dkt. 66, at 19); see Dolphin Dep., Dkt. 66-3, at 4; Capone Dep., Dkt. 66-3, at 27.)

Plaintiffs are scheduled to work one of three different eight-hour shifts: "day" shift from 7:00 a.m. to 3:00 p.m., "second" shift from 3:00 p.m. to 11:00 p.m., and the "midnight" shift from 11:00 p.m. to 7:00 a.m. (DSUMF, Dkt. 67, at ¶ 8.) The CBA further provides:

> No later than the first day of each contract year, employees shall be allowed to bid for shift assignment and then for two (2) consecutive days off in accordance with their seniority. The shift and days so bid shall be permanent for the duration of the calendar year, unless a vacancy occurs, except that if it is necessary for the County to transfer an employee to a different shift it shall transfer the least senior qualified employee in the classification which must be filled; if there is no employee in that classification, the employer shall select the least senior qualified employee who is capable of fully and immediately performing the job.

(Id. at ¶ 9 (quoting CBA at § 9.4).) Furthermore, the CBA provides:

> All employees covered by this Agreement shall receive time and one-half their regular rate of pay for all regular hours worked over eight (8) in one (1) day or forty (40) hours in one (1) week. There shall be no pyramiding of overtime hours or pay for overtime hours worked. To determine the hourly wage in effect divide 2080 hours into the annual base Salary as set forth on exhibit A plus any additional payment which is to be added to the base Salary (such as required in A.) Section 2. above.

(Id. at ¶ 10 (quoting CBA at § 20.B.3, Dkt. 66, at 21).)  The CBA also sets forth a dispute-resolution mechanism to resolve grievances between the Union and Lackawanna County.  (Id. at ¶ 11.)

It is Plaintiffs' contention that they were "required to attend, and did attend, daily pre-shift meetings that commenced fifteen minutes prior to the start of their scheduled shifts, and were not compensated for the time spent attending these alleged pre-shift meetings."  (Id. at ¶ 14.)  Plaintiffs assert that their required attendance at these pre-shift meetings resulted in them working more than 40 hours per week, for which they were entitled to overtime pay as prescribed by the FLSA.  Plaintiffs, however, do not allege a violation of the CBA.  (Id. at ¶ 15.)

In March 2004, Lackawanna County appointed Paul Jennings as the Warden of the Prison.  (Id. at ¶ 16.)  Upon his appointment, Warden Jennings began a complete overhaul of Prison policies and procedures.  (Id. at ¶ 19.)  "Warden Jennings participated in the collective bargaining negotiations with the Union after he was appointed warden, and, during those negotiations, there was no discussion of the issue of Plaintiffs not being compensated for time spent at daily pre-shift meetings, which issue was not included in the then negotiated CBA."  (Id. at ¶ 18.)  Moreover,  "[d]uring Warden Jennings' tenure as warden, there were no grievances filed by or with the Union concerning the County's failure to compensate Plaintiffs for time spent at an allegedly required, daily, pre-shift meeting."  (Id. at ¶ 26.)

In September 2005, Warden Jennings resigned his position as warden of the Prison.

(Id. at ¶ 27.)  That same month, Lackawanna County appointed Assistant Warden Janine

Donate as the acting warden.  (Id. at ¶ 28.)   In May 2006, the County appointed Ms. Donate as

warden.  (Id.)  During Warden Donate's tenure as warden, she has continued to review existing

policies and implement new policies, practices, and procedures.  (Id. at ¶ 29.)

Warden Donate testified that she was not aware that any pre-shift meetings were taking

place and never participated in any pre-shift meetings.  (Donate Dep., Dkt. 66-4, at 9.)  Warden

Jennings testified that the policy and procedure manual that he created and implemented did

not contain a policy that required corrections officers and sergeants to attend daily pre-shift 15-

minute meetings before the start of their scheduled shifts and that he does not recall seeing

any document that required employees to attend daily pre-shift 15-minute meetings.  (Jennings

Dep., Dkt. 68-3, at 5.)

While Warden Donate did not implement any new prison policies requiring correction

officers and sergeants to report to the prison fifteen minutes prior to the start of their scheduled

shift, Policy A-112 remained in effect.  (Id. at ¶ 30.)  Policy A-112 provides:

> 204.  Roll Call and Duty Inspection for Correctional Staff shall begin promptly at
> the times listed below and in the Muster Room:
> > 1st Shift (Day)                0645 hours
> > 2nd Shift (Afternoon)          1445 hours
> > 3rd Shift (Evening)            2245 hours
> 205.  No Supervisor or Correctional Officer shall be absent from roll call unless
> authorized by the Security Captain or Shift Commander.  Admittance to roll call
> shall not be permitted to any Correctional Officer who does not report to the
> Muster Room at the assigned time. . . .

(Plaintiffs' Statement of Undisputed Material Fact ("PSUMF"), Dkt. 68, at ¶ 22 (quoting Exhibit

D, Policy A-112, ¶¶ 204-05).)  The November 2006 Lackawanna County Prison Employee

Manual provides that "Roll Call is to be held in the muster room and not be accessible to

inmates," and that "Shift Commander is to attend roll call daily."  (2006 Employee Manual, Dkt.

68-14, at 7, section 1.22.)

"From May 18, 2005 to May 18, 2007, Plaintiffs earned hourly salaries ranging from a

low of $12.89 to a high of $20.41.  During this relevant time period, on a week-to-week basis,

no Plaintiff earned an hourly rate less than the federally mandated hourly minimum wage."

(DSUMF, Dkt. 67, at ¶ 44.)

Plaintiffs filed a complaint in this Court on May 18, 2007, alleging violation of the FLSA.

(Comp., Dkt. 1, at ¶¶ 29-34.)[2]  Plaintiffs allege no state law or contract violations.  (Id.)  On

---

[2] Count I of Plaintiff's single-count complaint alleges:

30.  The FLSA requires that covered employees be compensated for every hour
worked in a workweek.  See 29 U.S.C. § 206(b).
31.  The FLSA requires that covered employees receive overtime compensation
'not less than one and one-half times' their regular rate of pay for all hours
worked over 40 in a workweek.  See 29 U.S.C. § 207(a)(1).
32.  The compensable workday for Plaintiffs and the Class began at the start of
the daily pre-shift meeting, and all subsequent time was compensable work
under the FLSA.
33.  Defendants violated the FLSA by failing to compensate Uniformed Staff on a
daily basis for the fifteen minutes of compensable work time between the start of
the daily pre-shift meeting and the scheduled beginning of their shift.  Moreover,
where such uncompensated time constituted overtime pay, Defendant failed to
pay Plaintiffs and the Class the FLSA's mandated overtime premium.

August 21, 2009, Defendant filed a Motion for Summary Judgment. (Dkt. 64.) Oral argument was held on March 16, 2010. (Dkt. 73.) The matter has been fully briefed and is ripe for review.

## II. DISCUSSION

### A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the

---

34. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

(Comp., Dkt. 1, at ¶¶ 30-34.) Plaintiffs later withdrew any FLSA claim under section 206(b) that they were not paid for all time worked, restricting their cause of action to FLSA overtime. (Opp. Mt. S.J., Dkt. 69, at 1, n.1.)

existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988), abrogated on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).  Once the moving party satisfies its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.  Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials.  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party" bears the burden of proof at trial.  Celotex, 477 U.S. at 322.

B.     Statute of Limitations

Actions under the FLSA to recover overtime compensation must be commenced within two years of the alleged violation, or within three years if the violation is willful.  See 29 U.S.C. § 255(a).  "The FLSA's two-tiered statute of limitations reflects Congress's intent to distinguish between willful" and negligent violation of the FLSA.  Hanscom v. Carteret Mortgage Corp., No.

1:06cv2483, 2008 WL 4845832, at *3 (M.D. Pa. Nov. 5, 2008).[3] "An employer willfully violates the FLSA if 'the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act.'" Id. "[A]n employer has not willfully violated the FLSA if it acts reasonably in determining its legal obligation." Pignataro v. Port Auth. of New York & New Jersey, 593 F.3d 265, 273 (3d Cir. 2010). "[A]n employers' 'evident indifference toward the requirements imposed by the FLSA is fully consistent with a willful violation of the Act.'" Wood v. Kaplan Properties, Inc., No. 09-1941, 2009 WL 3230267, at *6 (D.N.J. Sept. 29, 2009) (quoting Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296 (3d Cir. 1991)). "Whether a violation of the FLSA is willful is a question of fact . . . ." Pignataro, 593 F.3d at 273; see also Mavrinac v. Emergency Med. Ass'n of Pittsburg, Civ. A. No. 04-1880, 2007 WL 2908007, at *9 (W.D. Pa. Oct. 2, 2007).

Defendant contends that Plaintiffs cannot establish that the alleged conduct was a willful violation of the FLSA, and accordingly, the two year, not the three year, statute of limitations applies. (Mt. S.J., Dkt. 65, at 21.) Plaintiffs oppose this contention, arguing that they have presented evidence to support a finding that Defendant willfully violated the FLSA. (Opp. Mt. S.J., Dkt. 69, at 13.)

---

[3] "'The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations.'" Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1105 (3d Cir. 1995) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988)).

As Plaintiffs assert, there is evidence in the record that, if credited by a fact-finder, supports the conclusion that Defendant willfully violated the FLSA. First, there is some evidence of indifference to whether Defendant was in compliance with the FLSA. In this regard, Warden Donate admitted that after the lawsuit was filed she did nothing to cease any possible pre-shift meetings, she never made inquiries to lieutenants to find out if pre-shift meetings were occurring, she never investigated whether such meetings would constitute compensable time, and she never spoke to or directed anyone that pre-shift meetings were not expected. (Donate Dep., Dkt. 68-4, at 20.) Officer Patrick Capone indicated that Warden Donate had told him through a memo that he needed to arrive at his shift fifteen (15) minutes early in June 2008. (Capone Dep., Dkt. 68-23, at 3.) Officer Capone also stated that this was about the time that the meetings ended. (Id. at 25.) Although the current lawsuit was filed in May 2007, Lieutenant James Walsh testified that the pre-shift meetings occurred until October or November of 2008. (Walsh Dep., Dkt. 68-16, at 3.) Lieutenant Walsh also indicated it was clearly "the wishes of the warden that we be present" at a pre-shift meeting. (Id. at 6.) Lieutenant Oleski indicated it was his belief that the pre-shift meetings ended around September 2007. (Oleski Dep., Dkt. 68-22, at 2.) Sergeant William Shanley indicated that the meetings ended somewhere between August and December 2008. (Shanley Dep., Dkt. 68-10, at 4.) Sergeant Joseph Kearney noted that the pre-shift meetings ended around June 2008. (Kearney Dep., Dkt. 68-7, at 16; June 3, 2008 Times Tribune Art., Dkt. 68-24, at 1.)

There is also evidence that calls into question management's disavowal of knowledge of the pre-shift meeting requirements. During oral argument, Defendant admitted there was a factual dispute as to whether any officers complained about attending the meetings without compensation. (Oral Arg. Trans., Dkt. 74, at 9.) Plaintiffs rely on the testimony of numerous officers to support the position that officers had complained about the propriety of attending the meetings without compensation. Sergeant William Shanley testified that he indicated that he had brought the issue of compensation for pre-shift meetings to the Union's attention half a dozen times. (Shanley Dep., Dkt. 68-10, at 3-4, 14.) Sergeant Shanley also testified that he submitted for overtime for the pre-shift meetings, but was not paid. (Id. at 34.) Sergeant Shanley also indicated he had raised the issue of compensation for the pre-shift meetings with Captain Chiarelli, Lieutenant McGraw, Former Warden Jennings, Former-Warden Wynder, and Former-Warden Gilhooley. (Id. at 5-6, 17, 35.) Former Deputy Warden Robert Hilborn indicated that during his tenure corrections officers complained to him about arriving fifteen (15) minutes early for their shifts. (Hilborn Dep., Dkt. 68-6, at 40-41.) Sergeant Joseph Kearney indicated that Joseph Gallagher, Matthew Urbas, Paul DeSando, Victor Gowat, Michael Gulbin, and Shawn Sayer had complained to him about not being paid for pre-shift meetings. (Kearney Dep., Dkt. 68-7, at 27, 28.) Evidence casting doubt on management's professed lack of knowledge of required pre-shift meetings could support a finding of a willful violation.

Viewing the evidence in a light most favorable to Plaintiffs, a reasonable fact-finder

could find Defendant's alleged actions were willful. Testimony reveals that the alleged pre-shift meetings continued for over a year after the current action was filed, that Warden Donate did nothing to determine whether the pre-shift meetings were occurring during that time period, and that officers had previously complained about uncompensated attendance of the pre-shift meetings. See Wood, 2009 WL 3230267, at *6. Accordingly, there is evidence that a willful violation of the FLSA may have occurred, and summary judgment on this issue is inappropriate. See Pignataro, 593 F.3d at 273. Defendant's Motion for Summary Judgment, as it applies to the statute of limitations issue, will be denied.

## C.    Liquidated Damages

Defendant also contends that liquidated damages are improper in this action, asserting that it acted in good faith and had reasonable grounds to believe that it was not violating the FLSA. (Mt. S.J., Dkt. 65, at 24-25.) It is Plaintiffs' position that they have presented sufficient evidence for a reasonable fact-finder to conclude that Defendant did not act in good faith. (Opp. Mt. S.J., Dkt. 69, at 15.)

"The FLSA provides that 'an employer who violates the overtime provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages . . . .'" Brooks v. Village of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999) (quoting 29 U.S.C. § 216(b)). A district court, however, may "withhold or reduce the amount of liquidated damages

12

'if the employer shows . . . that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA.'" Id. (quoting 29 U.S.C. § 260). "In determining an employer's subjective good faith, a court must find that the employer had an honest intention to ascertain and follow the dictates of the FLSA." Id. (citing Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982)).

As there is evidence that Defendant may have willfully violated the FLSA, summary adjudication of the good faith issue is also inappropriate. As previously discussed, Plaintiffs have presented evidence to support the proposition that the alleged acts were willful and/or intentional. The question of Defendant's good faith is best left for the fact-finder. Accordingly, Defendant's Motion for Summary Judgment as to the liquidated damages claim will be denied.

D.    Fair Labor Standards Act

Plaintiffs' Complaint alleges violation of section 206(b) and 207(a) of the FLSA. (Dkt. 1.) "The Fair Labor Standards Act ("FLSA") 'establishes a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number.'" O'Hara v. Menino, 312 F. Supp. 2d 99, 102 (D. Mass.2004) (quoting Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1149 (10th Cir. 1992)).

1. Section 206(b)

A section 206(b) claim concerns the failure to be compensated for all hours worked at

13

least in the amount of the prescribed minimum hourly wage.  It is Defendant's position that summary judgment should be granted in its favor on Plaintiffs' FLSA section 206(b) minimum wage claim.  (Mt. S.J., Dkt. 65, at 18.) As noted above, Plaintiffs concede that they are not pursuing a section 206(b) claim.  (Opp. Mt. S.J., Dkt. 69, at 1, n.1.)  Accordingly, the section 206(b) FLSA claim will be dismissed.

       2. Section 207(a)

Defendant also contends that Plaintiffs' section 207(a) claims should be dismissed.  The FLSA mandates the payment of overtime wages through the following provision:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  "In order to prevail on a FLSA overtime claim, plaintiffs must show that they 'performed work for which [they were] not properly compensated.'" Federal Air Marshals v. United States, 84 Fed. Cl. 585, 592 (Fed. Cl. 2008) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).  "Specifically, plaintiffs must demonstrate that they have worked hours in excess of their applicable workweek under the statute, and that they have not been compensated at least one and one-half times their regular rate for those hours." Id. "[T]he FLSA applies to the states and their political subdivisions."  McGrath v. City of

Philadelphia, 864 F. Supp. 466, 473 (E.D. Pa. 1994).

Defendant argues that it is not liable for overtime wages pursuant to section 207(a) because Plaintiffs' claims are governed by the partial exemption in section 207(k) of the FLSA. In pertinent part, section 207(k) provides:

> No public agency shall be deemed to have violated section (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if – (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k).  "The Code of Federal Regulations ("C.F.R.") issued by the Department of Labor ("DOL") and adopted pursuant to the FLSA further clarifies the maximum hours standards for work periods under § 207(k)."  O'Hara v. Menino, 312 F. Supp. 2d 99, 102 (D. Mass. 2004).  Specifically, the regulation provides:

> For those employees engaged in law enforcement activities (including security personnel in correctional institutions) who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28.

29 C.F.R. § 553.230(b).  Under this provision, "'if the City adopted a work period of between 7 and 28 consecutive days, then the City is entitled to require its employees to work more hours

15

without overtime pay.'" McGrath, 864 F. Supp. at 474 (quoting Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 804 (11th Cir. 1992)). Specifically, "[f]or a work period of seven days, law enforcement personnel would not be eligible for overtime until they exceeded" forty-two and three quarters (42.75) hours, i.e., 7/28 x 171 hours. O'Hara, 312 F. Supp. 2d at 102.

"Section 207(k) is not a true exemption from the strictures of the FLSA; it 'adjusts the permissible length of the workweek but does not completely remove specified employees from the FLSA's protection." Federal Air Marshals, 84 Fed. Cl. at 592 (quoting Brock v. City of Cincinnati, 236 F.3d 793, 810 (6th Cir. 2001)). "The exception, contained in Section 7(k), reflects Congress' recognition 'that certain jobs are not easily susceptible to the workweek method of wage and time calculations.'" McGrath, 864 F. Supp. at 474 (quoting Wethington v. City of Montgomery, 935 F.2d 222, 224 (11th Cir. 1991)).

As explained in Federal Air Marshals, 84 Fed. Cl. at 592, there are two requirements that must be met for § 207(k) to apply: "First the plaintiff employer must be 'in fire protection' or 'in law enforcement' activities; second, the employer must have adopted a qualifying work period." See 29 U.S.C. § 207(k); O'Brien, 350 F.3d at 290. "[I]f the employer fails to announce the qualifying work period, the ordinary work period and overtime provisions of § 207(a) apply." O'Hara, 312 F. Supp. 2d at 105.

"[I]t is well settled that, 'exemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them.'" Monahan v. County of

Chesterfield, Va., 95 F.3d 1263, 1267 (4th Cir. 1996) (quoting Johnson v. City of Columbia, S.C., 949 F.2d 127, 129-30 (4th Cir. 1991)). "Public employers bear the burden of proving they meet § 207(k)'s requirements by clear and affirmative evidence." Calvao v. Town of Framingham, No. 09-1648, 2010 WL 936553, at *3 (1st Cir. Mar. 17, 2010).

"To avail itself of the advantages available under Section 7(k) an employer must adopt a specified work period." Maldonado, 1993 WL 269650, at *1. "'Work period' is a term of art that is not the equivalent of a 'workweek,' 'administrative workweek,' or 'pay period;' nevertheless, the FLSA does not specifically define the term." Federal Air Marshals, 84 Fed. Cl. at 593-94 (quoting Wood v. City of Elgin, No. 07-05418, 2008 WL 151382, at *2 (N.D. Ill. Jan. 14, 2008)). "Instead, it must be an 'established and regularly recurring period of work . . . and it need not coincide with the duty cycle or pay period.'" Caminiti v. County of Essex, N.J., Civ. No. 04-4276, 2007 WL 2226005, at *8 (D.N.J. July 31, 2007) (quoting 29 C.F.R. § 553.224(a)). The County "bears the burden of proving, by a preponderance of the evidence, that it has adopted a 7(k) work period." McGrath, 684 F. Supp. at 474. Although the employer must show that it has met the requirements of section 207(k) by clear and affirmative evidence, establishment of a work period is not a high hurdle to overcome. O'Hara, 312 F. Supp. 2d at 105.

Defendant contends that Plaintiffs are employed in law enforcement activities and that they have adopted a seven (7) day work period with five days on and two days off. (Mt. S.J., Dkt. 65, at 12.) Plaintiffs do not argue that they are not employed in law enforcement

activities.[4]  Nor do they argue that Defendants have failed to adopt a qualifying work period.

(Oral Arg. Trans., Dkt. 74, at 18.)  Accordingly, Defendants have satisfied the two-prong

standard for determining applicability of section 7(k).  The section 7(k) partial exemption

requires Plaintiffs to prove that they worked over 42.75 hours in a work period, as opposed to

40 hours in a work period, for the FLSA overtime requirements to apply.

### a.  Retroactivity of Section 7(k) for Litigation Purposes

While Plaintiffs admit that Defendant satisfies both elements of section 7(k)'s partial

exemption, they argue that the 42.75 hour limitation in section 7(k) may not be enforced

retroactively.  It is their position that since Defendants did not "announce" prior to suit that the

work period was adopted in order to comply with the FLSA, the section 7(k) partial exemption

may not be applied here solely for litigation purposes.  (Oral Arg. Trans., Dkt. 74, at 18; Opp.

Mt. S.J., Dkt. 69, at 8.)  Plaintiffs cite three sources in support of their argument that §207(k)

cannot be applied retroactively: 1.) a 1994 Wage and Hour Division Opinion Letter, 1994 WL

1004749 (Jan. 13, 1994); 2.) a Kansas district court case, Ackley v. Department of Corrections,

844 F. Supp. 680, 687 (D. Kan. 1994); and 3.) a Puerto Rico district court case, Maldonado v.

Administracion de Correccion, No. 90-2186, 1993 WL 269650, at *1 (D.P.R. July 1, 1993).

_____

[4]  Courts have recognized that corrections officers are indeed law enforcement
personnel for purposes of the § 207(k) exemption.  Alexander v. City of Chicago, 994 F.2d 333,
337 n.5 (7th Cir. 1993); Ackley v. Dep't of Corr. of State of Kansas, 844 F. Supp. 680 (D. Kan.
1994).

Defendant cites an abundance of case law rejecting Plaintiffs' position.

The Opinion Letter upon which Plaintiffs rely provides:

In a situation where the employer has met the prerequisites described above, but inadvertently has failed to compensate affected employees for some overtime hours worked (e.g., failing to count some required preshift activities as "hours worked") we would not deny the otherwise applicable § 7(k) exemption.

Wage and Hour Division Opinion Letter, 1994 WL 1004749 (Jan. 13, 1994).  "'While opinion letters are not binding on the courts, they do constitute a body of experienced and informed judgment which have been given considerable and in some cases decisive weight.'" Monahan, 95 F.3d at 1283 (quoting Schultz v. W.R. Hartin & Son, Inc., 428 F.2d 186, 191 (4th Cir. 1970)). Opinion letters, however, "'are entitled to respect . . . only to the extent that their interpretations have the power to persuade.'"  Calvao v. Town of Framingham, No. 09-1648, 2010 WL 936553 (1st Cir. Mar. 17, 2010) (quoting Christensen v. Harris County, 529 U.S. 576, 587 (2000)).  In several cases, courts have concluded that the Opinion Letter is less than compelling.

In Birdwell, the plaintiffs advanced an argument similar to that presented here.  The plaintiffs asserted that the city had "waived the advantages of the 7(k) exemption by virtue of its contract which promises to pay overtime after 40 hours and by its conduct of paying overtime after 40 hours."  Birdwell, 970 F.2d at 806. The Eleventh Circuit found that "'parties cannot contract out of the Act . . . . [T]he question of contract or agreement is not relevant to whether the FLSA covers a given situation.'" Id. (quoting Wethington v. City of Montgomery, 935 F.2d 222, 229 (11th Cir. 1991)).  The court observed that, "[a]lthough the city agreed in the contract

19

to pay overtime after 40 hours, the FLSA requires the city to pay overtime after 40 hours only if the city has not adopted a seven day work period." Id. More recently, the First Circuit noted that an employer "may opt to pay its employees more than § 207(k) mandates without forfeiting the benefits of the exemption." Calvao v. Town of Framingham, No. 09-1648, 2010 WL 936553, at *3 (1st Cir. Mar. 17, 2010).

Plaintiffs' citation to Ackley, 844 F. Supp. at 687, is also unpersuasive. In Ackley, the court determined that the defendant had failed to adopt a section 207(k) work period prior to the commencement of the litigation. Id.[5] Plaintiffs' reliance on Maldonado, is also misplaced. (Opp. Br., Dkt. 69, at 9 (citing Maldonado, 1993 WL 269650, at *1).) In Maldonado, the defendant conceded that no work period was chosen and the court undertook an independent analysis and found that the defendant had chosen not to avail itself of the benefits section 7(k). Accordingly, section 7(k) did not apply. Maldonado, 1993 WL 269650, at *3.

As Judge Jesse Eschbach stated in Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996), "nothing in the language of the statute, 29 U.S.C. § 207(k), requires [a defendant] to express a 'declaration of intent' to qualify for the exemption." Consistent with the absence of any statutory notification requirement, a number of courts have found that a

---

[5] The court noted: "The defendant's § 207(k) argument appears to have been raised only after suit was filed in an effort to avoid liability. The defendant has produced no document that reflects a contemporaneous decision to adopt a § 207(k) exemption during the time in question." Ackley, 844 F. Supp. 687. Here, however, it is clear that Defendant adopted a seven day work period prior to the filing of this action.

declaration of intent is unnecessary to obtain the benefits of section 7(k). See, e.g., Spradling v. City of Tulsa, 95 F.3d 1492, 1505 (10th Cir. 1996); Chavez v. City of Albuquerque, No. 02-562, 2008 WL 370699 (D.N.M. Jan. 17, 2008); Adair v. City of Kirkland, 185 F.3d 1055, 1062 (9th Cir. 1999).

In Calvao v. Town of Framingham, No. 09-1648, 2010 WL 936553, at *1 (1st Cir. Mar. 17, 2010), the First Circuit was recently faced with the question that Plaintiffs present here – whether a city or town must give notice to public safety officers before taking advantage of § 207(k). The court ultimately determined that "a public employer need only establish a § 207(k)-compliant work period to claim the exemption's benefits without explicitly giving notice to the affected employees." Id.

In Calvao, the defendant adopted a twenty-four day work period but did not provide notice to the officers union or individual police officers that the work period was adopted. Id. at *4. The officers followed a 5-3 schedule, working five days on duty, followed by three days off. Id. The court determined that "[t]he test of §207(k) does not specify that a public employer is required to establish a work period or identify how an employer might do so," and does not contain a "requirement of notice to the affected employee." Id. (citing 29 U.S.C. § 207(k)). Buttressing the court's conclusion was the fact that "Congress explicitly rejected a proposal mandating employee agreement before a § 207(k) work period could be established." Id. (citing Barefield, 81 F.3d at 710); see H.R. Rep. No. 953, 93d Cong., 2d Sess. (1974) (Conf. Rep.).

The court also cited the Secretary of Labor's rejection of a proposal to impose a notice requirement, citing the Secretary of Labor's observation that "'there is no requirement in the Act that an employer formally state its intention to obtain an agreement in advance to pay employees under section 207(k).'" Id. at *5 (quoting 52 Fed. Reg. at 2025). Furthermore, the court expressly found that the plaintiff's citation to the 1994 Department of Labor Letter, also cited by Plaintiff in the case sub judice, was not persuasive as the opinion letter plainly found that the ruling was "'based exclusively on the facts and circumstances' presented." Id. at *6 (quoting Dep't of Labor Ltr. Rul. FLSA-1374). Accordingly, the court held that "[t]he Town was not required to notify plaintiffs that it had established a § 207(k) work period." Id. at *7.

Although it does not appear that the Third Circuit has faced this issue, this Court is persuaded by the overwhelming weight of authority holding that an employer is not required to notify its workforce that it is adopting a section 207(k) work period in order to avail itself of the limited exemption from the FLSA overtime requirements that it affords. Accordingly, Plaintiffs' argument that section 7(k) cannot be applied here is without merit. See Calvao, 2010 WL 936553, at *1; Adair, 185 F.3d at 1062; Barefield, 81 F.3d at 710.

### 3. Compensation for "Gap Time"

When Plaintiffs did not work any extra shifts or beyond their normal 8-hour shift, but did attend mandatory pre-shift meetings of 15 minutes duration, they would have worked 41.25 hours, but been compensated for 40 hours. When they worked extra days and/or additional

shifts, and attended a pre-shift meeting, they would have worked up to 1.75 hours (the cumulative total for pre-shift meetings in a 7-day work period) without compensation. The questions here are (a) whether Plaintiffs are entitled to any compensation under the FLSA when the hours for which they were paid plus pre-shift meeting time did not exceed 42.75 hours (the overtime threshold); and (b) whether Plaintiffs are entitled to be compensated for pre-shift meeting time when their total hours exceeded the overtime threshold of 42.75 hours.

The first category has been labeled pure "gap time." As observed in Robertson v. Board of County Commissioners of County of Morgan, 78 F. Supp. 2d 1142, 1159 (D. Col. 1999), "'[g]ap time' refers to time that is not covered by the FLSA's overtime provision because it does not exceed the overtime limit" of 42.75 hours worked in a 7-day period and, "when actual hours worked are divided into the salary, the regular rate does not fall below the minimum wage requirements of the FLSA." Contractual overtime, defined in collective bargaining agreements, is distinguishable from statutory overtime which is set by the FLSA. Koelker v. Mayor & City Council of Cumberland, Md., 599 F. Supp. 2d 624, 631 (D. Md. 2009).

In Lamon v. City of Shawnee, 972 F.2d 1145 (10th Cir. 1992), the Tenth Circuit held that a pure "gap time" claim asserted by police officers who worked over 160 hours in 28 days, but less than the 171 hours as provided in section 7(k), due to uncompensated meal time, were entitled to damages under the FLSA in the amount of their regular wage, even though the statutory maximum hours set by section 7(k) were not exceeded. Id. at 1155. Plaintiffs rely

23

upon Lamon in arguing that failure to pay them their regular wage in the pure "gap time" context violates the FLSA. Other courts have been unpersuaded by Lamon. See Monahan, 95 F.3d at 1272; Maciel v. City of Los Angeles, 569 F. Supp. 2d 1038, 1056 (C.D. Cal. 2008); Farris v. County of Riverside, 667 F. Supp. 2d 1151, 1161 (C.D. Cal. 2009); Abbe v. City of San Diego, No. 05cv1629, 2007 WL 4146696, at *14 (S.D. Cal. Nov. 9, 2007); Carter v. City of Charleston, 995 F. Supp. 620 (D.S.C. 1997).

The Fourth Circuit in Monahan performed an extensive analysis of the Tenth Circuit's holding in Lamon and the district court decision in Schmitt v. Kansas, 844 F. Supp. 1449, 1451 (D. Kan. 1994),[6] and ultimately determined that a pure gap time remedy cannot "be derived under the auspices of FLSA when such a remedy does not exist under law." Id. The court in Monahan specifically stated: "[W]e disagree with Lamon I, Schmitt I &II, and any other authority that implies claims for pure gap time, straight time when no overtime has been worked, are cognizable under the FLSA when the employer has not violated the FLSA's minimum wage/ maximum hour provisions." Id. at 1282.

"Hours worked beyond the regularly assigned workweek are not considered 'overtime' within the meaning of the FLSA unless they also exceed the FLSA threshold." Koelker, 599 F. Supp. 2d at 631 (citing Monahan, 95 F.3d at 1276). Thus, as recognized in Koelker, "Defendant's failure to pay overtime for hours worked beyond plaintiffs' regularly scheduled

---

[6] Authored by the same judge who authored the district court opinion in Lamon.

workweek violates only the Agreements, not the FLSA." Id.

When an employee does work overtime, however, a different situation exists:

The Fourth Circuit has found that when an employee works statutory overtime in a work period, an employer must do two things in order to comply with the FLSA: compensate the employee 'at a rate of at least time and a half for all hours worked in excess of the maximum allowed,' and pay 'all straight time compensation due to the employee for nonovertime hours under the express or implied employment agreement or applicable statute.'

Id. at 632 (quoting Monahan, 95 F.3d at 1273).

The logic of Monahan is straightforward and unassailable: if no overtime is worked during a pay period, the overtime provisions of the FLSA cannot provide a basis for a straight time claim. Monahan, 95 F.3d at 1280. "Logically, in pay periods without overtime, there can be no violation of section 207 which regulates overtime payment." Id. The court further held:

[I]f the mutually agreed upon terms of an employment agreement do not violate the FLSA's minimum wage/ maximum hour mandates and provide compensation for all nonovertime hours up to the overtime threshold, there can be no viable claim for straight gap time under the FLSA if all hours worked above the threshold have been properly compensated at a proper overtime rate.

Id. at 1273. Accordingly, "[a]bsent a minimum wage/maximum hour violation, [there is] no remedy under the FLSA for pure gap time claims." Id. at 1284. This "ruling precludes an employee from invoking the jurisdiction of federal court on a pure gap time claim allegedly under the FLSA when there is no minimum wage/maximum hour violation." Id.

As this Court has determined that section 7(k) applies to this case, and that Plaintiffs' retroactivity argument is unpersuasive, Plaintiffs are not entitled to prevail for any work period in

the three years preceding the filing of this action during which they did not work more than

42.75 hours, including the pre-shift meeting time.[7] See Monahan, 95 F.3d at 1284.

III.    CONCLUSION

Accordingly, for the above-stated reasons, Defendant's Motion for Summary Judgment

will be granted in part.  The section 6(b) claim asserted against Defendant in Count I will be

dismissed.  Moreover, Defendant is entitled to a declaration that section 7(k) of the FLSA

applies to the current action, and that it has no liability under the FLSA with respect to pay

periods when a Plaintiff did not work in excess of 42.75 hours, including the pre-shift meeting

time.  In all other respects, Defendant's motion will be denied.  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[7] Plaintiffs who did not work beyond 42.75 hours in a week, including pre-shift meetings, at any time during their tenure at the prison thus have no viable FLSA claim here.  Evidence has been presented, however, that many, if not all, Plaintiffs routinely worked over 42.75 hours within the limitations period.  (E.g., Zelinski Stub, Dkt. 68-2, at 2-4; Sedlak Stub, Dkt. 68-2, at 5-7, 14; Maher Stub, Dkt. 68-2, at 8-9, 13; Cavanaugh Stub, Dkt. 68-2, at 10, 12; Flaim Stub, Dkt. 68-2, at 16.) The issue of the rate of pay Plaintiffs may be due for hours worked between 40 and 42.75 hours when Plaintiffs worked more than 42.75 hours cannot be resolved at this stage of the proceedings as liability for the alleged uncompensated time has yet to be determined.

26

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOSEPH GALLAGHER, et al.,            :
                    Plaintiffs       :
                                     :
        v.                           :        3:CV-07-0912
                                     :        (JUDGE VANASKIE)
LACKAWANNA COUNTY                    :
                    Defendant        :

ORDER

NOW, THIS 31st DAY OF MARCH, 2010, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1.  Defendant's Motion for Summary Judgment (Dkt. 64) is GRANTED IN PART.  The

section 6(b) claim, asserted in Count I, is DISMISSED.  Defendants are entitled to a declaration

that section 7(k) of the FLSA applies and Plaintiffs may not recover under the FLSA for a pure

"gap time" claim.

2.  A Telephone Scheduling Conference shall be held on Monday, April 12, 2010, at

8:30 a.m.  Plaintiffs' counsel is responsible for placing the call to (570) 207-5720, and all parties

should be ready to proceed before the undersigned is contacted.

                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie
                              United States District Judge